IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01652-MSK-BNB

ELIZABETH MITCHELL,

    Plaintiff,

v.

THOMAS L. ALCORN;
LOIS ALCORN;
DANIEL NOVEN;
LEE KUTNER; and
JEFFREY WEINMANN,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to a Motion to Dismiss **(# 5)** by all Defendants except Mr. Weinman[1], and Ms. Mitchell's response **(# 10)**; a Motion to Dismiss **(#9)** by Mr. Weinman, and Ms. Mitchell's response **(# 13)**; and a second Motion to Dismiss by Mr. Weinman **(# 36)**, Ms. Mitchell's response **(# 42)**, and Mr. Weinman's reply **(# 45)**.

According to the *pro se* Complaint **(# 1)**, in or about 2004, Ms. Mitchell, through a business entity called Chameleon Entertainment Systems, Inc., executed certain promissory notes in favor of the Alcorns and Mr. Noven. Although Ms. Mitchell disputes certain facts with regard to these notes, it appears to be undisputed that the later notes fell into default.

---

[1] The caption spells Mr. Weinman's name incorrectly. Hereafter, reference to him will be made in accordance with the spelling used in his pleadings.

1

In January 2007, the Alcorns and Mr. Noven, through their counsel Mr. Kutner, initiated an involuntary Chapter 7 Bankruptcy Petition against Ms. Mitchell. Ms. Mitchell, through her counsel, Defendant Weinman, sought dismissal of the Petition and commenced an adversary proceeding against the Alcorns, Mr. Noven, and Mr. Kutner for having conspired to proffer false information in support of the involuntary Petition.

Thereafter, Ms. Mitchell suffered from severe medical problems. In an attempt to resolve the bankruptcy issue and the claims against the various Defendants, entered into a Settlement Agreement to resolve all outstanding matters. Ms. Mitchell alleges that, when she signed the Settlement Agreement tendered to her by Mr. Weinman, she lacked the capacity to read and understand it and that she did not intend to compromise her claims against the Defendants. When she recovered from the medical problems, she renewed her request to commence proceedings against the Alcorns, Mr. Noven, and Mr. Kutner for fraud, only to learn that she had unwittingly compromised those claims in the Settlement Agreement.

In the instant Complaint, Ms. Mitchell asserts eight claims: (i) conspiracy to file a false document "with this Court," against the Alcorns, Mr. Noven, and Mr. Kutner; (ii) failing a false document in the Bankruptcy Court (apparently meaning the Petition), against the Alcorns, Mr. Noven, and Mr. Kutner; (iii) abuse of process against the Alcorns and Mr. Noven, in that they improperly use the Bankruptcy Court process for the ulterior purpose of taking over Chameleon Entertainment Systems; (iv) a request for sanctions under Fed. R. Civ. P. 11 against the Alcorns, Mr. Noven, and Mr. Kutner for making false filings in the bankruptcy case; (v) fraud against Mr. Weinman, in that he misrepresented to Ms. Mitchell that the Settlement Agreement preserved her rights as against the other Defendants and failed to advise her that it affirmed certain debts to the

Defendants that she disputed; (vi) a request for a declaratory judgment against all Defendants that the Settlement Agreement is "flawed and not enforceable" because "it purports to legitimize fraud"; (vii) legal malpractice against Mr. Weinman; and (viii) "emotional distress" in that the Defendants knew of Ms. Mitchell's "frail physical and emotional condition" at the time they filed the Petition against her, and that as a result of that action, Ms. Mitchell has suffered emotional pain, medical complications and "an inability to trust people and to rebuild her business."

The Alcorns, Mr. Noven, and Mr. Kutner jointly move **(# 5)** to dismiss[2] the claims against them pursuant to Fed. R. Civ. P. 12(b)(6), arguing: (i) Ms. Mitchell's claims were released by operation of the Settlement Agreement or by virtue of her failure to request relief for a frivolous filing under 11 U.S.C. § 303(i); (ii) claims against Mr. Kutner personally are misplaced, as he appeared in the bankruptcy proceeding on behalf of a law firm and that any claims by Ms. Mitchell would have to be asserted against that firm; (iii) the conspiracy claim is defective for several reasons, including that "no false documents was filed" in the bankruptcy case and that "the elements of a conspiracy claim [do not exist] in this case," although the moving Defendants do not specifically explain which elements are missing; (iv) the claim for filing a false document is deficient because "the promissory notes and claims that underlie the Chameleon case were all adjudicated in favor of the Creditors" and that many of the same notes that underlie the Chameleon involuntary filing support the Mitchell filing as they were

---

[2]The motion does not comply with the format required for motions to dismiss. MSK Practice Standards (Civil), § V.I.2. The Court also notes that much of the motion is devoted to making various factual assertions. As discussed below, the Court disregards any factual assertions that exceed that alleged in Ms. Mitchell's Complaint.

guaranteed"; (v) the abuse of process claim fails because "it is contrary to the obvious facts of the case"; (vi) the Rule 11 claim fails "since the order for relief entered in the Chameleon case which constitutes an adjudication of the involuntary allegations in favor of the Creditors" and because "there are no allegations or support for the proposition that the Involuntary Petition was not supported by valid claims for money owed by Chameleon"; (vii) the declaratory judgment claim fails because Ms. Mitchell entered into the settlement and never sought to appeal the Order approving it, and thus "the allegations simply do not support a declaratory judgment action"; and (viii) as to the emotional distress claim, "any claim has been released or waived and any claim is statutorily barred," and further, that the conduct alleged does not arise to the level of being sufficiently outrageous.

Separately, Mr. Weinman moved to dismiss **(# 9)** the claims against him pursuant to Fed. R. Civ. P. 12(b)(1), noting that Ms. Mitchell's suit in this Court is predicated on federal question jurisdiction, in that the Defendants "violated the U.S. Bankruptcy Code," and that the claims against him are "based on principles of pendent jurisdiction." He argues that the predicate of Ms. Mitchell's claim is an alleged violation of 11 U.S.C. § 303(i), but that Ms. Mitchell released any such claims as part of the Settlement Agreement, that the claims against him fail to raise any federal question, and that the claims are sufficiently distinct from those against other Defendants that the Court should decline to exercise supplemental jurisdiction over them.

Later, Mr. Weinman filed a second motion to dismiss **(# 36)**, arguing that Ms. Mitchell failed to file a Certificate of Review in support of the malpractice claim as required by C.R.S. § 13-20-602(1)(a), thus warranting dismissal of the action.

Shortly thereafter, Ms. Mitchell moved for leave to amend **(# 37)** her Complaint,

4

explaining that she wished to join Mr. Kutner's firm as a defendant, to include additional allegations regarding the fraudulent nature of the promissory notes, and to amplify certain allegations against Mr. Weinman. That matter is currently referred to the Magistrate Judge, and thus, the Court does not reach the motion to amend in this Order.

## **ANALYSIS**

Throughout this Order, the Court has proceeded mindful of Ms. Mitchell's *pro se* status. A *pro se* litigant is entitled to liberal construction of her pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the litigant's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the litigant of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Ms. Mitchell according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**A. Weinman motions**

Mr. Weinman makes two motions, one challenging the Court's subject matter jurisdiction over the claims against him under Fed. R. Civ. P. 12(b)(1), and one challenging Ms. Mitchell's compliance with a procedural precondition to the legal malpractice claim. Because the subject matter jurisdiction motion implicates the Court's ability to hear this case in any capacity, the Court turns to it first.

1. Subject matter jurisdiction motion

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Here, Mr. Weinman's motion challenges the facial sufficiency of the Complaint's allegations with regard to subject matter jurisdiction,[3] and thus, the Court treats the allegations in the Complaint as true and looks simply to see whether those allegations are sufficient to support jurisdiction. The party asserting the existence of subject matter jurisdiction– in this case, Ms. Mitchell – bears the burden of proving such jurisdiction exists. *Montoya v. Chao*, 269 F.3d 952, 955 (10th Cir. 2002).

Ms. Mitchell premises federal court jurisdiction on the existence of a federal question under 28 U.S.C. § 1331. That statute provides subject matter jurisdiction in this Court over actions "arising under the Constitution, laws, or treaties of the United States." Federal question jurisdiction is not dependent on whether the plaintiff asserts a federal cause of action; it is enough that a significant, contested federal issue is implicated by a claim that otherwise arises under state law. *See e.g. Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). Here, the Court finds that Ms. Mitchell's claims do not raise, directly or indirectly, any claim that requires interpretation or application of bankruptcy law or any other matter of federal

---

[3]Ms. Mitchell does not contend that the Court has original jurisdiction over her claims against Mr. Weinman. Instead, she contends that such claims are cognizable under supplemental jurisdiction, 28 U.S.C. § 1367. This argument does not prevent the Court from first considering whether it has original jurisdiction over any of the claims against any Defendant in this suit, as the Court is under a continuing obligation to *sua sponte* consider its own subject matter jurisdiction. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

interest.

There is no question that the claims raise factual issues with regard to what happened in a bankruptcy case. However, those factual issues, regardless of how construed, do not lead to the conclusion that an issue involving federal law will require interpretation or application as a result of resolution of the factual dispute. If Ms. Mitchell is correct, and the involuntary bankruptcy petition was filed because of false representations by her purported creditors and their counsel, the Court begins its examination of Ms. Mitchell's remedies by looking to what the situation would have been without the false representations. Ms. Mitchell asserts that none of the debts upon which the petition was premised were actually owed, and thus, the petition could not have been filed based on the facts alleged by Ms. Mitchell. The measure of damages, then, would likely be defined as Ms. Mitchell's economic losses – perhaps the amounts she expended defending in the bankruptcy proceeding and any consequential damages flowing therefrom – as well as non-economic damages to the extent supported by proof. None of these issues require the Court to ascertain and apply principles of bankruptcy law; indeed, the analysis would be the same if, instead of a proceeding in Bankruptcy Court, Ms. Mitchell alleged that the fraudulent filings occurred in connection with a breach of contract lawsuit filed by the creditors against her on the promissory notes in state court. Bankruptcy, in this context, is a classic example of what Alfred Hitchcock referred to as a "McGuffin" – an element of the plot or setting that initially appears to be of importance, but which ultimately has no bearing on the development or resolution of the story.

The same analysis, or slight variants thereof, applies with regard to most of Ms. Mitchell's other claims. The claim for abuse of process, for example, might touch on the general

7

question of what the proper purpose of a bankruptcy filing is, in order to determine whether the purposes sought to be achieved by the creditors were proper. But the inquiry into the general purpose of bankruptcy proceedings does not appear to be an issue that is significantly disputed by the parties. Ms. Mitchell disputes the <u>factual</u> question of whether the creditors indeed intended to collect on their debts, but she does not dispute the <u>legal</u> question of whether the collection of debts is the proper purpose of a bankruptcy proceeding. This purely factual dispute does not require the Court to construe bankruptcy law in any way. Similarly, Ms. Mitchell's malpractice claims against Mr. Weinman play out before the backdrop of bankruptcy, but do not entail contested questions of bankruptcy law. Rather, Ms. Mitchell alleges that Mr. Weinman committed malpractice by not giving her proper legal advice about the effect of signing a contract containing certain provisions. Nothing in this dispute requires the Court to apply or interpret bankruptcy law. The only claim that arguably implicates bankruptcy issues is Ms. Mitchell's contention that this Court should impose sanctions under the bankruptcy equivalent of Fed. R. Civ. P. 11, but that "claim" patently fails to state a claim. The sanctions contemplated by Rule 11 allow the presiding judge in a proceeding to punish parties for improper actions committed during that proceeding. It does not create a private cause of action that can be used collaterally by a court in one proceeding to punish parties for misconduct committed in a different proceeding. To the extent Ms. Mitchell believes she is entitled to sanctions against Mr. Kutner based on conduct in the bankruptcy case, she must seek such sanctions from the judge presiding over the bankruptcy case.

Because Ms. Mitchell cannot point to a particular issue of bankruptcy law that is present, significant, and contested in this case, the Court finds that this case raises no federal question

under 28 U.S.C. § 1331, nor does it involve an ongoing bankruptcy proceeding under 28 U.S.C. § 1334. In short, the Court cannot ascertain any basis for exercising federal jurisdiction over Ms. Mitchell's entirely state-law claims. Because the Court lacks subject matter jurisdiction over any claim in this action, the case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## CONCLUSION

For the foregoing reasons, Mr. Weinman's Motion to Dismiss **(# 9)** based on subject matter jurisdiction is **GRANTED**. The Complaint is **DISMISSED** in its entirety for lack of subject matter jurisdiction. The remaining motions in this case are **DENIED AS MOOT**. The Clerk of the Court shall close this case.

Dated this 8th day of March, 2010

BY THE COURT:

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge